HOLLINGSWORTH, Appellant,

v.

TIME WARNER CABLE, a Division of Time Warner
Entertainment Co., L.P., Appellee.

[Cite as *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 2004-Ohio-3130.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030663.

Decided June 18, 2004.

542

David M. Cook, LLC, David M. Cook and Stephen A. Simon, for appellant.

Greenebaum, Doll & McDonald, PLLC, and Peter K. Newman, for appellee.

WINKLER, Presiding Judge.

{¶ 1} Plaintiff-appellant, Patti Hollingsworth, appeals from the order of the trial court granting summary judgment in favor of defendant-appellee, Time

Warner Cable, a division of Time Warner Entertainment Co., L.P. ("Time Warner"). Hollingsworth assigns two errors: (1) that the trial court erred in granting summary judgment in favor of Time Warner and (2) that the trial court erred in granting Time Warner's motion for a protective order and denying her corresponding motion to compel discovery. For the following reasons, we affirm in part and reverse in part the judgment of the trial court.

### Background Facts

{¶ 2} Hollingsworth began working for Time Warner in 1989. In 1996, Hollingsworth was promoted to the position of audit coordinator, a position she held until her termination in March 2002.

{¶ 3} In October 2000, Hollingsworth's treating physician certified that she suffered from chronic sinusitis, so Hollingsworth was granted intermittent leave from her employment pursuant to the Family and Medical Leave Act ("FMLA").[1] On September 4, 2001, Hollingsworth left work early because she was ill. Over the next two days, Hollingsworth's physician's office sent notes to Hollingsworth's supervisor, Theresa Johnson, confirming her excused absences. Johnson was the supervisor of the credit and collections department. On September 7, 2001, Hollingsworth learned that Johnson had contacted her physician's office about the absences.

{¶ 4} Hollingsworth immediately filed a complaint with the United States Department of Labor ("DOL") with respect to Johnson's contact with the physician's office. An investigator with the DOL conducted an investigation of the incident and determined that, with the exception of Johnson's direct contact with the physician's office regarding Hollingsworth's medical condition, Time Warner "appeared to be in full compliance with the FMLA in regard to the employment of [Hollingsworth]."

{¶ 5} In late November or early December 2001, Hollingsworth notified Time Warner that she was pregnant. In December 2001, her obstetrician/gynecologist certified that Hollingsworth was pregnant and that, as a result of a pregnancy-related condition, Hollingsworth would need to work intermittently.

{¶ 6} On January 8, 2002, Johnson completed a yearly performance evaluation for Hollingsworth. Out of a maximum of five points, Hollingsworth received an individual score of 4.8. The evaluation also noted, "Patti's thoroughness and attention to detail yield a quality job performance." On January 9, 2002, Connie Emerson, the manager of the credit and collections department, signed the evaluation.

---

1. Section 2601 et seq., Title 29, U.S.Code.

{¶ 7} On January 10, 2002, Hollingsworth's attorney wrote a letter to Leroy Peyton, the vice president of human resources at Time Warner. Her attorney expressed concerns about Time Warner's treatment of Hollingsworth following her FMLA-protected absences and her complaint to the DOL. Specifically, her attorney referred to comments by her supervisors that she was not dependable and would, therefore, not be considered for a new position, and that she would be demoted to a clerical position due to her absences from work. Having received no response from legal counsel for Time Warner, Hollingsworth's attorney sent followup letters to Peyton on January 18, February 6, and February 14, 2002.

{¶ 8} Meanwhile, on January 16, 2002, Emerson investigated a customer's account following a complaint. Emerson contacted one of Time Warner's lobby representatives, Tisia Hill, who stated that she had made a mistake while posting the customer's payment on the account. Hill later admitted that she had kept the customer's $100 cash payment but had entered a bankruptcy adjustment on the customer's account to hide her actions. On January 18, 2002, Hill was terminated. Emerson then directed her subordinates to conduct a review of Hill's account adjustments. During that review, Emerson learned that the amount of money that had been stolen was over $18,000.

{¶ 9} On February 19, 2002, Emerson signed an employee-performance notice that indicated that Hollingsworth should be terminated for having improperly audited the adjustments of cash-handling lobby representatives and for having thus allowed an estimated $18,000 in thefts to occur. Emerson also noted that Hollingsworth's audit report had failed for months to include customer accounts from Green Township.

{¶ 10} On March 4, 2002, Hollingsworth was terminated by Time Warner. Johnson signed an employee-termination evaluation for Hollingsworth, which noted her poor job performance. Specifically, Johnson noted Hollingsworth's "failure to follow appropriate audit procedures which led to substantial loss of cash."

{¶ 11} Hollingsworth sued Time Warner for wrongful discharge in violation of Ohio's public policy, for discrimination and retaliation under the FMLA, and for pregnancy discrimination and retaliation under state and federal law. Time Warner filed a motion for summary judgment. Upon its finding that no genuine issues of material fact remained and that Time Warner was entitled to judgment as a matter of law, the trial court granted the motion. This appeal followed.

### Motion for Summary Judgment

{¶ 12} In her first assignment of error, Hollingsworth argues that the trial court erred by granting summary judgment in favor of Time Warner. We review

a grant of summary judgment de novo.[2]  In this case, Time Warner was entitled to summary judgment only if (1) there was no genuine issue of material fact, (2) it was entitled to judgment as a matter of law, and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of Hollingsworth, and that conclusion was adverse to Hollingsworth.[3]

{¶ 13} In pursuing summary judgment, the moving party has the burden to identify "those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims." [4] When the moving party discharges that burden, the nonmoving party then has a reciprocal burden to set forth specific facts by the means listed in Civ.R. 56(E) to show that a triable issue of fact exists.[5]

### Pregnancy Discrimination

{¶ 14} In her complaint, Hollingsworth alleged that Time Warner had discriminated against her in violation of both federal and state law because she was pregnant.

### Prima Facie Case Under the Federal "Pregnancy Discrimination Act"

{¶ 15} Title VII of the Civil Rights Act of 1964 prohibits discrimination because of race, color, religion, sex, or national origin.[6]  In 1978, Congress amended Title VII to include the Pregnancy Discrimination Act ("PDA").[7]  The PDA makes it an unlawful employment practice for an employer to discharge an employee due to "pregnancy, childbirth, or related medical conditions." [8]

{¶ 16} Ohio courts have concurrent subject-matter jurisdiction with federal courts over actions brought pursuant to Title VII.[9]  In analyzing Title VII claims, courts employ the framework established by the United States Supreme

2.  See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243.

3.  See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

4.  See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; see, also, Civ.R. 56(C).

5.  See *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904.

6.  See Section 2000e et seq., Title 42, U.S.Code.

7.  Section 2000e(k), Title 42, U.S.Code.

8.  Sections 2000e(2)(a)(1) and 2000e(k), Title 42, U.S.Code.

9.  See *Manning v. Ohio State Library Bd.* (1991), 62 Ohio St.3d 24, 577 N.E.2d 650, paragraph one of the syllabus;  see, also, *Yellow Freight Sys., Inc. v. Donnelly* (1990), 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834.

Court in *McDonnell Douglas Corp. v. Green*.[10]  Under the *McDonnell Douglas* test, to prevail on a claim of pregnancy discrimination, the employee has the initial burden to prove a prima facie case of discrimination.[11]  If the employee successfully demonstrates her prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge.[12]  The burden then shifts back to the employee to demonstrate that the articulated reason is merely a pretext for the discrimination.[13]

{¶ 17} To establish a prima facie case of discrimination under Title VII, the employee must demonstrate that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position that she lost, and (4) that she was replaced by a person outside the protected class, or that "a comparable non-protected person was treated better."[14]

{¶ 18} Similarly, a plaintiff may establish a prima facie case of discrimination in violation of the PDA if she shows that (1) she was pregnant, (2) she was subjected to an adverse employment decision, and (3) she was qualified for the job she lost.  As to the fourth element, the analysis of claims under the PDA is slightly different from the analysis of other sexual-discrimination claims under Title VII.[15]  "While [a] Title VII [sexual-discrimination claim] generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated 'in all respects' [citations omitted], the PDA requires only that the employee be similar in his or her 'ability or inability to work.' "[16]

{¶ 19} In this case, Time Warner does not dispute that Hollingsworth established the first three elements of her prima facie case.  With respect to the fourth element, Hollingsworth presented evidence demonstrating that a genuine issue of fact remained as to whether other employees, similar in their abilities to work, received more favorable treatment.  Specifically, Hollingsworth presented

---

10.  *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668; *McConaughy v. Boswell Oil Co.* (1998), 126 Ohio App.3d 820, 826, 711 N.E.2d 719; see, also, *Bullock v. Totes, Inc.* (Dec. 22, 2000), 1st Dist. No. C–000269, 2000 WL 1867400.

11.  *McDonnell Douglas*, supra.

12.  Id., 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.

13.  Id., 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d 668.

14.  Id., 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.

15.  *McConaughy*, supra, 126 Ohio App.3d at 827, 711 N.E.2d 719.

16.  Id., citing *Ensley–Gaines v. Runyon* (C.A.6, 1996), 100 F.3d 1220, 1226.

evidence that Roxanne Roberts and Annette Hampton, nonpregnant employees who conducted the audit procedures during Hollingsworth's absences, had made mistakes similar to the ones for which she was discharged, but that they were not disciplined or discharged. Accordingly, Hollingsworth presented sufficient evidence to establish a prima facie case of pregnancy discrimination under the PDA. Therefore, summary judgment was inappropriate on this claim.

### Prima Facie Case Under R.C. 4112.02

{¶ 20} Hollingsworth also claimed that Time Warner had engaged in discrimination based upon her pregnancy, in violation of R.C. 4112.02. Under R.C. 4112.02(A), it is an unlawful discriminatory practice for an employer to discharge without just cause any person because of the person's sex. This includes discrimination on the basis of pregnancy.[17] The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."[18] In the absence of direct or statistical evidence, the plaintiff can prove her case by way of the *McDonnell Douglas* test.[19]

{¶ 21} To establish a prima facie case of pregnancy discrimination under R.C. 4112.02, Hollingsworth had to demonstrate (1) that she was pregnant, (2) that she was discharged, and (3) that a nonpregnant employee similar in ability or inability to work was treated differently.[20] In this case, Time Warner does not dispute that Hollingsworth met her burden to establish a prima facie case of pregnancy discrimination under R.C. 4112.02.

### Time Warner's Nondiscriminatory Reasons for the Discharge

{¶ 22} Because Hollingsworth established prima facie cases of discrimination under both the PDA and R.C. 4112.02, the burden shifted to Time Warner to articulate a legitimate, nondiscriminatory reason for Hollingsworth's discharge.[21] Time Warner proffered two reasons for the discharge: (1) Hollingsworth's failure to properly audit cash adjustments, which led to a substantial loss of cash and (2)

---

17. R.C. 4112.01(B).

18. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128.

19. See *McConaughy,* supra, 126 Ohio App.3d at 830, 711 N.E.2d 719.

20. See *Frantz v. Beechmont Pet Hosp.* (1996), 117 Ohio App.3d 351, 690 N.E.2d 897; see, also, *McConaughy,* supra.

21. *Frantz,* supra, 117 Ohio App.3d at 359, 690 N.E.2d 897.

Hollingsworth's failure to ensure that the Green Township accounts were included in her adjustment reports.

### Hollingsworth's Burden to Demonstrate Pretext

{¶ 23} Once Time Warner proffered its nondiscriminatory reasons for the discharge, the burden shifted to Hollingsworth to demonstrate that the reasons were pretextual. A plaintiff may establish pretext by showing by a preponderance of the evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." [22] In this case, Hollingsworth argued that Time Warner's articulated reasons had no basis in fact and that the reasons were insufficient to motivate her discharge because similarly situated employees had suffered no discipline or discharge.

{¶ 24} As an audit coordinator, one of Hollingsworth's tasks was to audit customer account adjustments made by employees at Time Warner's satellite offices, where customers could make payments on their cable bills. If a customer notified Time Warner that he or she had filed for bankruptcy, a lobby representative would process the information on the customer account through various computer screens. The representative would adjust the balance on the customer's account to zero on the subscriber adjustment inquiry ("SAI") screen. Then the representative would add a permanent bankruptcy note to the customer's account on the subscriber memo statement ("SMS") screen.

{¶ 25} Each day, Hollingsworth received an adjustment report that listed all of the adjustments made to customer accounts on the previous day. For each bankruptcy adjustment, Hollingsworth checked to see whether the lobby representative had entered a permanent bankruptcy note on the customer's SMS screen. Hollingsworth then compared the dollar amount listed on the SMS screen with the dollar amount listed on the SAI screen. If Hollingsworth discovered any errors or any suspicious activity, she would send e-mails to the lobby representative who had processed the bankruptcy adjustment and to the representative's supervisor. Hollingsworth would then list the error on a monthly error log.

{¶ 26} In January 2002, Time Warner discovered that Tisia Hill, a lobby representative, had been pocketing cash payments by customers and concealing her thefts by entering false bankruptcy adjustments for those accounts. Time Warner alleged that Hollingsworth should have detected the thefts through her auditing procedures.

---

22. *Manzer v. Diamond Shamrock Chem. Co.* (C.A.6, 1994), 29 F.3d 1078, 1084.

{¶ 27} Hollingsworth testified that, upon her discovery of two or three of Hill's incorrect bankruptcy adjustments during the previous year, she had sent e-mails to Hill and to Hill's supervisor, Sandy Marshall, to alert them to the errors. Hollingsworth also entered the errors on her monthly error logs.

{¶ 28} At least one of Time Warner's managers admitted that, in order to determine whether Hollingsworth had failed to detect an error in connection with Hill's bankruptcy adjustments, a manager or another employee would have to review Hollingsworth's monthly error logs. Yet, in investigating the auditing of Hill's adjustments, no one at Time Warner had reviewed Hollingsworth's monthly error logs or e-mails. Nor did Time Warner retain the logs or e-mails for later review.

{¶ 29} Hollingsworth further presented evidence that Hill had deleted bankruptcy notes *after* Hollingsworth's audits of Hill's account adjustments. Emerson admitted that, if Hill had deleted a bankruptcy note following Hollingsworth's audit, Hollingsworth would not have been accountable for the error.

{¶ 30} We turn now to the question of the Green Township accounts. When Emerson recommended Hollingsworth's termination, she noted that Hollingsworth had failed since April 2001 to include Green Township accounts in her audit reports. Hollingsworth presented evidence that the Green Township accounts had been included in her reports from April to October 2001, when the accounts no longer appeared on her computer-generated reports. Hollingsworth immediately reported the problem to Bill Webb, in Time Warner's MIS department. Webb informed her that the problem would be corrected. But when Webb failed to take any action, Hollingsworth followed up with Webb's department manager, Jackie Pillsbury. When the problem was still not corrected in November, Hollingsworth again contacted Pillsbury. Todd Watkins, Time Warner's vice president of finance and the controller for the Cincinnati division, testified that Hollingsworth had acted appropriately and had performed her job function by notifying the manager of the MIS department.

{¶ 31} Hollingsworth also argues that the reasons proffered by Time Warner for her discharge were pretextual because similarly situated employees were not discharged or disciplined. During the time that Hill had entered false bankruptcy adjustments, Hollingsworth was frequently absent from work on FMLA-protected leave. In her absence, Roberts and Hampton performed audits of the lobby representatives' bankruptcy adjustments. Despite making errors similar to the errors attributable to Hollingsworth with respect to the adjustments and Green Township accounts, these employees were not disciplined or discharged, although Watkins testified that such action should have been considered if they had not performed their jobs.

{¶ 32} Nor did Time Warner discipline Marshall, Hill's direct supervisor, for failing to detect Hill's theft. The theft occurred despite the knowledge of Time Warner management of the serious potential for theft by its cash-handling lobby representatives. Time Warner also did not discipline Hollingsworth's supervisor, Johnson, or her manager, Emerson, despite their failures to ensure that there were no such problems in the credit and collections system. Watkins testified that Johnson and Emerson had both failed to do their jobs. But neither was disciplined. In fact, Johnson was soon promoted. Watkins also testified that Webb and Pillsbury were responsible for handling the problem with the Green Township accounts, yet they, too, were not disciplined.

{¶ 33} Given these disparities in treatment, genuine issues of fact remained as to whether Time Warner's nondiscriminatory reasons for Hollingsworth's termination were pretextual. Therefore, summary judgment on Hollingsworth's pregnancy discrimination claims was inappropriate.

### Discrimination Under FMLA

{¶ 34} To establish a prima facie case of discrimination under the FMLA, an employee must demonstrate that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position that she lost; and (4) she was replaced by a person outside the protected class, or a comparable non-protected person was treated better.[23] In this case, Time Warner does not dispute that Hollingsworth had established the first three elements of her prima facie case, but it argued that she had failed to establish the fourth element. Time Warner argues that even though Hampton, Marshall, and Johnson had not exercised their rights under the FMLA, Hollingsworth could not establish that they were treated better because none of them had engaged in "misconduct of comparable seriousness to [Hollingsworth's] misconduct."

{¶ 35} Because Hollingsworth presented evidence that Hill had deleted bankruptcy notations following Hollingsworth's audits, and that Hampton, Marshall, and Johnson had similarly failed to detect errors that she was charged with, Hollingsworth established a prima facie case of FMLA discrimination.

{¶ 36} And because Hollingsworth established a prima facie case, the burden shifted to Time Warner to articulate a nondiscriminatory reason for her discharge.[24] Once Time Warner proffered its reasons for the discharge, the burden

---

**23.** See *Skrjanc v. Great Lakes Power Serv., Co.* (C.A.6, 2001), 272 F.3d 309, 315, citing *McDonnell Douglas,* supra, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.

**24.** See id.

shifted to Hollingsworth to demonstrate that the reasons were pretextual.[25]

{¶ 37} As we have already held, Hollingsworth demonstrated that a genuine issue of fact remained as to whether Time Warner's nondiscriminatory reasons were pretextual. Summary judgment was therefore inappropriate on Hollingsworth's FMLA claim.

### Retaliatory Discharge

{¶ 38} Hollingsworth argued that she was terminated in violation of state and federal law because she opposed unlawful employment practices in connection with her pregnancy and in connection with the exercise of her rights under the FMLA.

### Retaliation in Violation of Title VII and R.C. 4112.02

{¶ 39} Under Title VII, an employer may not retaliate against an employee who has opposed a practice made unlawful by Sections 2000e through 2000e–17, Title 42, U.S.Code, or who has made a charge, testified, assisted, or participated in an investigation, proceeding or hearing under these sections.[26] Under Ohio law, R.C. 4112.02(I) makes it an unlawful employment practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

{¶ 40} The test for establishing a retaliation claim under federal and state law is basically the same.[27] To prove a prima facie case of retaliation under Title VII or R.C. 4112.01 et seq., a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) her employer knew about the protected activity; (3) her employer took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.[28]

{¶ 41} If the plaintiff establishes a prima facie case, then the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason"

---

**25.** Id.

**26.** Section 2000e–3, Title 42, U.S.Code.

**27.** See *Pflanz v. Cincinnati,* 149 Ohio App.3d 743, 2002-Ohio-5492, 778 N.E.2d 1073, at ¶ 52.

**28.** *Canitia v. Yellow Freight Sys.* (C.A.6, 1990), 903 F.2d 1064, 1066; *Wille v. Hunkar Lab., Inc.* (1998), 132 Ohio App.3d 92, 107–108, 724 N.E.2d 492.

for its actions.[29] The plaintiff must then demonstrate "that the proffered reason was not the true reason for the employment decision." [30]

{¶ 42} In this case, Hollingsworth claimed that she had filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") in April 2002. The filing of such a claim would have been a protected activity under Title VII and R.C. 4112.02(I). But Hollingsworth could not establish a causal connection between her discharge and the protected activity because the discharge happened a month before she filed her EEOC claim. Therefore, summary judgment was proper on this claim.

### Retaliation in Violation of the FMLA

{¶ 43} Hollingsworth also claimed that Time Warner retaliated against her because she had exercised her rights under the FMLA. The FMLA allows eligible employees to take up to 12 weeks of unpaid leave in any 12–month period for qualifying medical or family reasons.[31] An employer may not retaliate against an employee who exercises her rights under the FMLA.[32] Hollingsworth claimed that Time Warner retaliated against her because she had filed a complaint with the Department of Labor and had contacted an attorney.

{¶ 44} In analyzing a claim of FMLA retaliation, courts apply the *McDonnell Douglas* burden-shifting framework.[33] In order to establish a prima facie case of retaliatory discharge, Hollingsworth was required to demonstrate (1) that she had availed herself of a protected right under the FMLA, (2) which was known to Time Warner, (3) and that she suffered an adverse employment action, (4) that was related to the protected activity.[34]

{¶ 45} Hollingsworth presented evidence that her supervisor, Johnson, had directly contacted her physician's office in September 2001. On another occasion, after Hollingsworth had informed Time Warner of her pregnancy, Johnson had told Hollingsworth that she would not be returning to work

---

29. *McDonnell Douglas*, supra, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.

30. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207.

31. Section 2612(a)(1), Title 29, U.S.Code.

32. Section 2615, Title 29, U.S.Code.

33. See *Coulter v. Deloitte Consulting, L.L.C.* (C.A.6, 2003), 79 Fed.Appx. 864, 2003 WL 22514343, citing *Skrjanc*, supra.

34. See *Canitia*, supra, 903 F.2d 1064.

following maternity leave. In late December 2001, Emerson told Hollingsworth that, because of her frequent absences, she would be transferred to a clerical position, which Hollingsworth testified was a demotion.

{¶ 46} In this case, Time Warner does not dispute that Hollingsworth presented a prima facie case of retaliatory discharge for the exercise of her rights under the FMLA, but it argues that Hollingsworth failed to meet her burden to demonstrate that its nondiscriminatory reasons were pretextual. As we have decided, Hollingsworth met her burden to demonstrate that genuine issues of fact remained as to whether Time Warner's discharge reasons were a pretext for discrimination. Accordingly, summary judgment was inappropriately granted on Hollingsworth's retaliation claim.

### Violation of Public Policy

{¶ 47} In her complaint, Hollingsworth alleged that she was wrongfully discharged by Time Warner in violation of Ohio's public policy. Specifically, Hollingsworth claimed that her discharge violated the state's public policies against pregnancy discrimination and against retaliation by an employer for an employee's opposition to unlawful employment practices and consultation with an attorney.

{¶ 48} In Ohio, an employee at will may be terminated by his or her employer for any reason, or no reason at all, as long as the termination is not contrary to law.[35] But an exception to the employment-at-will doctrine exists where the termination is contrary to the clear public policy of Ohio.[36] In order to prove wrongful termination in violation of public policy, a plaintiff must demonstrate four elements: (1) that a clear public policy existed and was manifested in a state or federal constitution, in a statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element).[37]

---

35. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150.

36. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph two of the syllabus.

37. *Taylor v. Volunteers of Am.*, 153 Ohio App.3d 698, 2003-Ohio-4306, 795 N.E.2d 716, at ¶ 8, citing *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653.

{¶ 49} The clarity and the jeopardy elements pose questions of law and policy to be determined by the court.[38] The causation and overriding-justification elements pose questions of fact to be determined by the trier of fact.[39]

### Clarity and Jeopardy Elements of Hollingsworth's Public–Policy Claims

{¶ 50} At this point, we must first determine whether the clarity and jeopardy elements were established before determining whether Hollingsworth presented adequate evidence on the causation and justification elements to survive a motion for summary judgment.

### Pregnancy Discrimination

{¶ 51} In *Collins v. Rizkana*, the Ohio Supreme Court held that this state has a clear public policy against sexual discrimination that sufficiently justified an exception to the employment-at-will doctrine. The court further held that the public policy would be jeopardized by sexually motivated dismissals.[40] The court noted that while R.C. 4112.02 provided a statutory prohibition against workplace sexual discrimination, it did not operate to preclude a common-law cause of action for wrongful discharge in violation of public policy.[41] This public policy against sexual discrimination has been extended to pregnancy discrimination.[42]

{¶ 52} In this case then, where Ohio has a clear public policy against pregnancy discrimination that would be jeopardized by the firing of pregnant employees, Hollingsworth satisfied both the clarity and jeopardy elements of her claim for wrongful discharge in violation of public policy.

### Retaliation for Consulting an Attorney

{¶ 53} Hollingsworth also argued that she had been wrongfully discharged in violation of public policy for consulting with an attorney. In *Chapman v. Adia Services, Inc.*,[43] this court held that the termination of an employee for

---

38.  *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308, citing *Collins v. Rizkana*, 73 Ohio St.3d at 70, 652 N.E.2d 653.

39.  *Collins v. Rizkana*, 73 Ohio St.3d at 70, 652 N.E.2d 653.

40.  Id., 73 Ohio St.3d at 73, 652 N.E.2d 653.

41.  Id., 73 Ohio St.3d at 74, 652 N.E.2d 653.

42.  See *Cechowski v. Goodwill Industries of Akron* (May 14, 1997), 9th Dist. No. 17944, 1997 WL 270523; *Yelton v. Stehlin* (Aug. 20, 1999), 1st Dist. No. C–980503, 1999 WL 631002.

43.  *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d 534, 688 N.E.2d 604.

consulting with an attorney regarding the merits of a claim that would have affected the employer's interests was a violation of public policy in Ohio. Accordingly, we hold that Hollingsworth satisfied the clarity and jeopardy elements of her wrongful-discharge claim where she claimed that she had been terminated merely for consulting an attorney.[44]

### Retaliation for Opposing Unlawful Employment Practices

{¶ 54} Hollingsworth alleged that Time Warner discharged her in retaliation for exercising her rights under the FMLA. She claimed that Time Warner's actions constituted a wrongful discharge in violation of Ohio's public policy. But the Supreme Court of Ohio has held that Ohio does not recognize a cause of action for wrongful discharge in violation of public policy when the cause of action is based solely on a discharge in violation of the FMLA.[45] Accordingly, the trial court properly granted summary judgment in favor of Time Warner on this claim.

### Causation and Overriding–Justification Elements of Public–Policy Claims

{¶ 55} We hold that Hollingsworth satisfied the clarity and jeopardy elements of her claims that she was discharged in violation of the Ohio public policies against pregnancy discrimination and against terminating an employee for consulting an attorney. But our inquiry does not end there. To survive summary judgment in Time Warner's favor, Hollingsworth was required to demonstrate that genuine issues of material fact existed on the causation and overriding-justification elements of her claims. In other words, Hollingsworth had to show that factual issues remained as to whether her dismissal was motivated by conduct related to the public policies against pregnancy discrimination and against terminating employees for consulting an attorney. She also had to demonstrate that factual issues remained as to whether Time Warner lacked an overriding legitimate business justification for her dismissal.

{¶ 56} Hollingsworth presented evidence that she was terminated just weeks after her attorney's last letter to Time Warner. Hollingsworth also presented evidence that she may have been made the scapegoat for Hill's theft by supervisors who were not pleased by her frequent absences for pregnancy-related conditions, even though the leaves were FMLA-protected. Moreover, Hollingsworth presented evidence that Time Warner's business justifications for her dismissal may have been pretextual.

44.  See id., 116 Ohio App.3d at 544, 688 N.E.2d 604.

45.  *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526.

{¶ 57} Accordingly, we hold that the trial court erred in granting summary judgment on Hollingsworth's claims for wrongful discharge in violation of Ohio's public policies against pregnancy discrimination and against termination of an employee for consulting an attorney. We hold that the trial court properly granted summary judgment on Hollingsworth's claim that she had been discharged in violation of public policy based solely on the FMLA. We further hold that the trial court properly granted summary judgment on Hollingsworth's claim of retaliation in violation of Title VII and R.C. 4112.02. Therefore, we sustain in part and overrule in part Hollingsworth's first assignment of error.

### *Motion for Protective Order*

{¶ 58} In her second assignment of error, Hollingsworth argues that the trial court erred by granting Time Warner's motion for a protective order and in overruling her motion to compel discovery.

{¶ 59} Following her discharge, Hollingsworth had applied for unemployment benefits, but Time Warner had opposed her claim. In a September 2002, hearing before the Ohio Unemployment Compensation Review Commission, Theresa Johnson, Hollingsworth's supervisor, testified about the reasons for Hollingsworth's termination. During her examination, Time Warner's representative produced an e-mail message from Peyton to Time Warner's senior counsel, Gregory Drake, dated February 28, 2002. Johnson testified that the e-mail message was "a summary of why [Hollingsworth] was actually terminated." In his e-mail message, Peyton referred to the potential for a complaint of retaliation and sought Drake's support for the anticipated termination of Hollingsworth. Within days of the e-mail from Peyton to Drake, Hollingsworth was terminated by Time Warner.

{¶ 60} Time Warner later produced the same e-mail message in response to Hollingworth's request for production of documents. Hollingsworth followed up with a second request for production of documents, in which she further sought "[a]ny and all correspondence, including but not limited to e-mails, between Leroy Peyton and Defendant's legal department, including but not limited to correspondence with Gregory Drake, concerning Plaintiff's discharge, her DOL complaint and/or EEOC charge, her attorney's January, 2002 letter to Defendant, and/or otherwise concerning her employment with Defendant."

{¶ 61} Time Warner claimed that Peyton's e-mail message had been inadvertently produced at the unemployment hearing, as well as in response to Hollingsworth's first discovery request. When Hollingsworth's attorney refused to return the document, Time Warner filed its motion. The motion sought a protective order "to prohibit [Hollingsworth] from using, retaining, and/or otherwise making reference to an attorney-client privileged document that was used in an unem-

ployment compensation hearing and inadvertently produced in discovery." In response, Hollingsworth filed a motion to compel Time Warner's response to her request for documents, including written communications between Peyton and Drake. Hollingsworth also asked the court to order Peyton to answer a question that had been asked in his deposition about his e-mail to Drake.

{¶ 62} The trial court ordered Hollingsworth's lawyer to return the document to Time Warner and to "refrain from using and/or otherwise making reference to this document in any manner." The trial court also denied Hollingsworth's motion to compel. On appeal, Hollingsworth challenges both rulings. Unless the trial court abused its discretion, we must uphold its disposition of the discovery issues.[46] An abuse of discretion connotes an unreasonable, arbitrary or unconscionable decision.[47]

{¶ 63} Generally, communications between attorneys and their clients are privileged and therefore exempt from discovery.[48] In Ohio, the attorney-client privilege is governed by R.C. 2317.02(A). Under the statute, an attorney cannot testify regarding a communication made to the attorney by a client or regarding the attorney's advice to a client unless (1) the client expressly consents, or (2) the client voluntarily testifies on the same subject.[49]

{¶ 64} R.C. 2317.021 extends the attorney-client privilege to corporations as clients. "Because that section defines a client as a corporation that 'communicates, either directly or through an agent, employee, or other representative, with' an attorney, the statute acknowledges that corporations or companies, as legal entities, can only communicate with counsel through their employees or agents."[50] "[C]orporate executives and managers, if endowed with appropriate authority by their employer, may on behalf of the corporation either assert or waive the attorney-client privilege."[51]

{¶ 65} The attorney-client privilege is waived where a client discloses communications with his or her attorney to a third party.[52] A client's voluntary

---

**46.** See *State ex rel. v. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 692 N.E.2d 198.

**47.** See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

**48.** See R.C. 2317.02(A); *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 744 N.E.2d 154.

**49.** See R.C. 2317.02(A); *State v. McDermott* (1995), 72 Ohio St.3d 570, 651 N.E.2d 985.

**50.** *Shaffer v. OhioHealth Corp.*, 10th Dist. No. 03AP–102, 2004-Ohio-63, 2004 WL 35725, at ¶ 10.

**51.** Id.

**52.** *Mid–American Natl. Bank & Trust Co. v. Cincinnati Ins. Co.* (1991), 74 Ohio App.3d 481, 599 N.E.2d 699.

disclosure of privileged communications "is inconsistent with an assertion of the attorney-client privilege." [53]  "Such disclosure waives any subsequent claim of privilege with regard to communications on the same subject matter.  [Citation omitted.]  The 'same subject matter' standard is, however, to be applied narrowly, rather than expansively." [54]

{¶ 66} In this case, Time Warner voluntarily divulged Peyton's February 28, 2002 communication with legal counsel at the unemployment hearing and in response to a discovery request.  In doing so, Time Warner waived any privilege with respect to the communication.  Because Hollingsworth's motion to compel was limited to testimony and documents regarding the same subject matter as the e-mail, the trial court abused its discretion in denying her motion.  Also, the court erred by granting Time Warner's motion for return of the communication and for a protective order.  Accordingly, we sustain Hollingsworth's second assignment of error.

### Conclusion

{¶ 67} We affirm the judgment of the trial court with respect to entry of summary judgment on Hollingsworth's claim for wrongful discharge in violation of public policy based on a violation of the FMLA.  We reverse the judgment of the trial court in all other respects and remand this case for further proceedings consistent with law and this decision.

Judgment reversed in part,
affirmed in part
and cause remanded.

GORMAN and SUNDERMANN, JJ., concur.

---

**53.**  *United States. v. Skeddle* (N.D.Ohio 1997), 989 F.Supp. 905, 908;  see, also, *Mid–American Natl. Bank & Trust Co.*, supra, 74 Ohio App.3d at 489, 599 N.E.2d 699.

**54.**  *Gomez v. Towne Bancorp* (N.D.Ohio 2000), 2000 WL 1183024;  see, also, *Mid–American Natl. Bank & Trust Co.*, supra.