[Cite as *Shram v. Masadeh*, 2024-Ohio-1662.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PHILIP SCHRAM, | : | APPEAL NOS. C-230352 |
| | | C-230357 |
| Plaintiff/Counterclaim-Defendant -Appellee, | : | TRIAL NO. A-2104070 |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| NADER MASADEH, | | |
| | : | |
| Defendant/Counterclaim- Plaintiff-Appellant, | | |
| | : | |
| and | : | |
| | | |
| CORS & BASSETT, LLC, | : | |
| | | |
| BUFFALO WINGS & RINGS, LLC, | : | |
| | | |
| and | : | |
| | | |
| BWR REAL ESTATE, LLC, | : | |
| | | |
| Nonparty-Appellants. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 1, 2024

*Keating Muething & Klekamp, PLL, Daniel E. Izenson, Bryce J. Yoder*, and *John E. Dahm*, for Plaintiff/Counterclaim-Defendant-Appellee,

*Jacobs, Kleinman, Seibel, & McNally, LPA, Mark Byrne*, and *Kathleen R. Byrne*, for Defendant/Counterclaim-Plaintiff-Appellant,

*Cors & Bassett, LLC, Curtis L. Cornett*, and *Alison M. Huenefeld*, for Nonparty-Appellants.

**CROUSE, Judge.**

{¶1}   This case involves a dispute over the assertion of the attorney-client privilege on behalf of two limited liability companies ("LLC") in a lawsuit between the only two members of both companies.

{¶2}   Plaintiff/counterclaim-defendant-appellee Philip Schram and defendant/counterclaim-plaintiff-appellant Nader Masadeh are the two members of nonparty-appellants Buffalo Wings and Rings, LLC, ("BWR") and BWR Real Estate, LLC, ("BWRRE"). As set forth in more detail below, Schram filed suit against Masadeh asserting various claims relating to actions taken by Masadeh in his role as manager of BWR. During the course of the litigation, Schram served subpoenas for the production of documents on BWR, BWRRE, and nonparty-appellant Cors & Bassett, LLC, ("C&B") the law firm representing BWR and BWRRE. We collectively refer to BWR, BWRRE, and C&B as "the subpoenaed entities." While the subpoenaed entities disclosed some of the requested documents, they refused to disclose others on the ground that they were privileged. The privilege was asserted on behalf of the subpoenaed entities by Masadeh as the managing member of BWR and a 50-percent member of BWRRE. Schram filed a motion to compel production of the documents, which the trial court granted.

{¶3}   Masadeh and the subpoenaed entities now appeal from the trial court's order granting the motion to compel. They argue that granting the motion was in error because it required the subpoenaed entities to produce privileged and irrelevant information. Because Masadeh failed to meet his burden of establishing that he was asserting the privilege in the best interests of the subpoenaed entities and not in his own best interest, we hold that he could not assert the attorney-client privilege over

3

the subpoenaed documents and that the trial court did not err in granting the motion to compel.

## I. Factual and Procedural Background

{¶4} Schram and Masadeh are the sole members of BWR, the company that runs the chain of Buffalo Wings and Rings restaurants. Each has a 50-percent interest in the company. Schram and Masadeh have long operated and run BWR pursuant to a jointly-executed operating agreement. The operating agreement has been amended numerous times in the history of the parties' ownership of BWR. The most recent agreement, the Fourth Amended and Restated Operating Agreement ("Fourth Amended Agreement"), was executed on December 8, 2020, and it superseded the previous agreement under which the parties had been operating.

{¶5} Notably, the Fourth Amended Agreement changed the operating structure of BWR from a member-managed LLC to a manager-managed LLC. Section 4.1 of the agreement provided that "the Manager shall direct, manage, oversee, and control the business and operations of the Company. No Member may act on behalf of the company in derogation of the authority, power, and discretion of the Manager." And Section 4.2 of the agreement stated that Masadeh would serve as the initial manager of BWR.

{¶6} As relevant to this appeal, the Fourth Amended Agreement also contained the following provisions: Section 4.4 of the agreement required that each member and manager perform their duties in good faith; Section 4.6 required the manager to make BWR's books and records available to any member, as long as the books and records were requested for a reasonable purpose; and Section 7.3 provided that the manager "shall" make cash distributions to the members from time to time.

4

{¶7} On the same date that the Fourth Amended Agreement was executed, Schram and Masadeh also executed a document titled "Joint Action Without a Meeting of the Members and Managers of Buffalo Wings & Rings, LLC" ("the Joint Action"). The Joint Action set forth the parties' intention for BWR to become a manager-managed LLC and for Schram to become a passive owner in the company, while Masadeh remained responsible for day-to-day operations. It provided that Schram would no longer be a BWR employee, but would hold the title of "Advisory Board Chair," and that he was entitled to various benefits, including a consulting fee, a quarterly payment to offset certain expenses, company gift cards, and insurance benefits.

{¶8} Schram and Masadeh were likewise the only two members of BWRRE, an entity that owned the property located at 8501 Beechmont Avenue. Each had a 50-percent interest in the company. BWRRE was also operated pursuant to a jointly-executed operating agreement. The most recent agreement, the Second Amended and Restated Operating Agreement, was executed on August 3, 2020. Management of BWRRE was reserved to its members, with each member possessing a vote equal to the member's ownership interest. Masadeh was the "President and CEO" of BWRRE, while Schram served as the company's "Chairman" and "Chief Brand Ambassador." In his role, Masadeh was responsible for "the general supervision, administration, and direction of the Company's affairs," for "executing all legal documents on behalf of the Company," and was "in charge of all money, bills, and insurance policies."

{¶9} Schram filed suit against Masadeh on November 24, 2021. The complaint alleged that Masadeh had engaged in a myriad of actions that violated both the Fourth Amended Agreement and the Joint Action, including overcompensating

himself, using BWR resources to pay personal legal expenses, refusing to pay distributions to Schram, dissolving in bad faith BWR's Advisory Board that Schram chaired, obstructing Schram's access to BWR's records, and failing to give Schram the benefits to which he was entitled under the Joint Action.

{¶10} The complaint asserted claims for fraudulent inducement, breach of contract, breach of the duty of good faith and fair dealing, and breach of the duty of loyalty. It additionally sought the following: removal of Masadeh as manager of BWR; a declaratory judgment that Schram had complied with his obligations under the Fourth Amended Agreement and Joint Action, that Masadeh had failed to comply with his obligations under the same documents, and that Masadeh had breached the duty of loyalty and the duty of good faith and fair dealing; injunctive relief enjoining Masadeh from violating the terms of the Fourth Amended Agreement and Joint Action; attorneys' fees; and punitive damages.

{¶11} Masadeh filed various counterclaims against Schram. In support of the counterclaims, Masadeh alleged that it became apparent around 2018 that Schram was not able to perform his duties for BWR, that Masadeh received complaints from numerous BWR employees regarding Schram's substandard performance and inability to communicate, that two consulting firms were hired to evaluate BWR, and that the consulting firms reported that Schram lacked leadership abilities. Masadeh further alleged that Schram had refused to cooperate with a sale of a portion of the Beechmont Avenue property owned by BWRRE and had demanded to receive a distribution in excess of one million dollars before providing his signature on a corporate authorization form to allow the sale of the property. He asserted counterclaims for breach of the obligation of good faith and fair dealing, breach of

6

contract, and breach of fiduciary duty. Masadeh also sought a declaratory judgment that BWR was required to pay his attorney fees.

{¶12} Schram served subpoenas for the production of documents on the subpoenaed entities. The subpoenaed entities complied in part with the subpoenas and turned over a portion of the requested documents, but they asserted that other documents would not be disclosed because they were privileged. The privilege was asserted on behalf of the subpoenaed entities by Masadeh as the managing member of BWR and a 50-percent member of BWRRE. Although the subpoenaed entities initially stated that a privilege log would be provided, they later asserted that a privilege log was unnecessary and declined to provide one.

{¶13} Schram filed a motion to compel the subpoenaed entities to comply with the subpoenas and produce the requested documents. Masadeh and the subpoenaed entities opposed the motion to compel. The trial court issued an order granting Schram's motion to compel. It stated that:

> Plaintiff counterclaim defendant Philip Schram's motion to compel compliance with subpoenas filed February 28, 2023: GRANTED, provided that all materials produced for which a claim of privilege is made shall be considered 'confidential material' covered by the protective order entered by this Court on February 18, 2022, such that such information may only be used in this proceeding and shall only be filed under seal.

{¶14} It is from this entry that Masadeh and the subpoenaed entities now appeal.

7

## II. Motion to Compel

**{¶15}** Both Masadeh and the subpoenaed entities raise a single assignment of error challenging the trial court's order granting the motion to compel. They contend that they were erroneously required to produce privileged and irrelevant materials.

### A. Standard of Review

**{¶16}** Typically, an appellate court reviews a trial court's discovery order for an abuse of discretion. *Spurgeon v. Mercy Health-Anderson Hosp., LLC*, 2020-Ohio-3099, 155 N.E.3d 103, ¶ 7 (1st Dist); *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. But where a "trial court's discovery order involve[s] the application or construction of statutory law regarding privilege, we review the order de novo." *Spurgeon* at ¶ 7; *see Ward* at ¶ 13. We accordingly review de novo appellants' assertion that they were erroneously required to turn over privileged material. "The burden to show that testimony or documents are confidential or privileged is on the party seeking to exclude the material." *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 19 (1st Dist.).

### B. Authority to Assert Privilege

**{¶17}** Masadeh and the subpoenaed entities assert multiple reasons why the trial court erred in granting the motion to compel. One such reason is that the operating agreements of BWR and BWRRE entitled Masadeh, as their corporate representative, to assert privilege on their behalf. They claim that Schram has no authority to waive that privilege on behalf of the companies. In response, Schram asserts that Masadeh could not assert a privilege on behalf of BWR and BWRRE because he was not asserting the privilege in the best interest of the corporations, but rather on his own behalf.

8

**{¶18}** Thus, the threshold question in this case is whether Masadeh could assert the attorney-client privilege on behalf of the subpoenaed entities. Such a determination depends on whether he was asserting the privilege in the best interests of BWR and BWRRE or on his own behalf.

**{¶19}** The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Grace*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, at ¶ 18, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The attorney-client privilege extends to corporations as clients through R.C. 2317.021. *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 2004-Ohio-3130, 812 N.E.2d 976, ¶ 64 (1st Dist.); *Shaffer v. OhioHealth Corp.*, 10th Dist. Franklin No. 03AP-102, 2004-Ohio-63, ¶ 10.

**{¶20}** As the United States Supreme Court has recognized, "[t]he administration of the attorney-client privilege in the case of corporations, however, presents special problems." *Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). This is because corporations are inanimate entities that cannot speak directly to an attorney or directly waive the attorney-client privilege if it is in their best interest to do so. *Id*. Rather, corporations must act through agents. "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Id*. In other words, "[c]orporate executives and managers, if endowed with appropriate authority by their employer, may on behalf of the corporation either assert or waive the attorney-client privilege." *Hollingsworth* at ¶ 64, quoting *Shaffer* at ¶ 10.

9

When exercising the privilege, the authorized executives and managers must do so "in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." *Weintraub* at 349; *Stuffleben v. Cowden*, 8th Dist. Cuyahoga No. 82537, 2003-Ohio-6334, ¶ 34.

{¶21}  In the case at bar, the privilege was asserted on behalf of the subpoenaed entities by Masadeh as the managing member of BWR and a 50-percent member of BWRRE. Although Masadeh is the party invoking the attorney-client privilege, he and the subpoenaed entities seemingly argue that it was necessary for him to do so because "Schram wishes to view privileged information, not on behalf of BWR or BWRRE, but in order to pursue his personal claims against Masadeh."

{¶22}  Masadeh and the subpoenaed entities have the analysis backwards and are looking at the motivation of the wrong party. In this case, it is Masadeh who has asserted the attorney-client privilege in order to prevent Schram from seeing certain documents. Pursuant to *Weintraub* and *Stuffleben*, it is the motive of the person exercising the attorney-client privilege on behalf of a corporation that must be examined. Exercise of a privilege includes both its assertion and waiver. *See Hollingsworth*, 157 Ohio App.3d 539, 2004-Ohio-3130, 812 N.E.2d 976, at ¶ 64 (on behalf of a corporation, authorized persons may either assert or waive the attorney-client privilege).

{¶23}  The lawsuit in this case is between the two 50-percent members of BWR and BWRRE. The two companies were not named as parties to the litigation. Generally, Schram's claims against Masadeh asserted that Masadeh, as the managing member of BWR, violated BWR's operating agreement and the Joint Action. While Schram's lawsuit against Masadeh largely centered around BWR, the Fourth Amended

Agreement, and the Joint Action, Masadeh's counterclaims against Schram included claims related to BWRRE and Schram's failure to cooperate with the sale of property owned by that entity.

**{¶24}** As the managing member of BWR and a 50-percent member of BWRRE, Masadeh had the authority to assert the attorney-client privilege on behalf of these companies. But Masadeh's exercise of the privilege must be made in the best interests of BWR and BWRRE. *See Stuffleben*, 8th Dist. Cuyahoga No. 82537, 2003-Ohio-6334, at ¶ 36.

**{¶25}** The asserted claims in this case concern allegations that either a managing member or a member with a 50-percent interest took action in violation of the duties owed to BWR and BWRRE that harmed the only other member of those entities. Contrary to the assertions of Masadeh and the subpoenaed entities, it can be plausibly argued that it is in the best interests of BWR and BWRRE that their members abide by the applicable operating agreements and to determine the veracity behind the allegations.

**{¶26}** The party seeking production of the allegedly privileged documents in this case is a 50-percent member of both BWR and BWRRE. Although the Joint Action made clear that Schram had withdrawn from the day-to-day operations of BWR, he remained a 50-percent member of that company. He did not own only a minority interest in the company, and there were no other members of the company other than Schram and Masadeh. The same is true of BWRRE. Schram was a 50-percent member of the two-member company. While Masadeh was responsible for the day-to-day operations of BWRRE, Schram was also an officer of the company. He served as the "Chairman" and "Chief Brand Ambassador," and pursuant to BWRRE's operating

11

agreement, was to assume Masadeh's duties should Masadeh be unable to perform them. Accordingly, Masadeh has not asserted the attorney-client privilege against a former member of either company, the general public, or a competitor of BWR and BWRRE; rather he is attempting to shield the documents from a fellow member of BWR and BWRRE in a lawsuit in which he is both seeking to avoid personal liability and personally recover on his asserted claims.

{¶27} On this record, we hold that Masadeh has failed to meet his burden of establishing that it is in the best interests of BWR and BWRRE to allow Masadeh to assert the attorney-client privilege and prevent a 50-percent member of each company from accessing the requested documents. *See Grace*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, at ¶ 19 ("The burden to show that testimony or documents are confidential or privileged is on the party seeking to exclude the material.").

{¶28} In an attempt to forestall such a holding, Masadeh argues that if he is precluded from invoking the attorney-client privilege on behalf of BWR and BWRRE, there would be no person at either company with the authority to invoke the privilege. Not so. Masadeh's argument conflates the overall authority to invoke the privilege with a determination of whether that invocation is in the best interests of the companies. We do not dispute that Masadeh is authorized to exercise the attorney-client privilege on behalf of BWR and BWRRE. But case law makes clear that he may only do so in the best interests of the companies. And on the facts of this case, he has not met his burden to show that he has done so.

{¶29} We accordingly hold that because Masadeh has not met his burden of demonstrating that he is invoking the attorney-client privilege in the best interests of BWR and BWRRE, the trial court did not err in granting the motion to compel.

### C. Relevancy

{¶30} With the exception of Masadeh's argument that the trial court ordered the subpoenaed entities to produce documents that were irrelevant to the matter at hand, our holding that Masadeh lacked authority to assert the attorney-client privilege moots the appellants' remaining arguments.

{¶31} Masadeh contends that the attorney-fee bills for both C&B and his personal counsel, which the motion to compel required be produced, are irrelevant. We do not reach the merits of this argument because it is outside of the scope of our limited appellate review.

{¶32} Our appellate jurisdiction is limited to the review of final judgments issued by lower courts. Ohio Constitution, Article IV, Section 3(B)(2). Typically, "discovery orders are neither final nor appealable." *Summitbridge Natl. Invests., L.L.C. v. Ameritek Custom Homes, Inc.*, 1st Dist. Hamilton No. C-120476, 2013-Ohio-760, ¶ 6. But because a provisional remedy is defined in R.C. 2505.02(A)(3) to include a proceeding concerning the discovery of a privileged matter, an appeal of a trial court's order compelling the production of privileged material will be final and appealable if it meets the requirements of R.C. 2505.02(B)(4). *Id.*

{¶33} R.C. 2505.02(B)(4) provides that a final order is:

An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

13

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

**{¶34}** Here, the trial court's order granting the motion to compel determined the action with respect to the provisional remedy by ordering the subpoenaed entities to produce allegedly privileged material. The documents at issue will no longer be confidential after disclosure, preventing a judgment in appellants' favor after trial. *See Am. Environmental Group, Ltd. v. H.M. Miller Constr. Co.*, 8th Dist. Cuyahoga No. 100854, 2014-Ohio-4681, ¶ 14. Further, "[i]f appellants are required to disclose privileged information, there exists no meaningful or effective remedy should the discovery order have been in error because once the information has been disclosed, there is no way to undo the disclosure." *Id.* at ¶ 15. The trial court's order in this case met both requirements of R.C. 2505.02(B)(4) and was final and appealable.

**{¶35}** But our jurisdiction to review the trial court's order is limited to matters concerning the discovery of privileged material. "To the extent an order pertains to matters other than those concerning discovery of privileged matters, the order is deemed interlocutory and therefore not final and appealable." *Legg v. Hallet*, 10th Dist. Franklin No. 07AP-170, 2007-Ohio-6595, ¶ 16. As such, arguments that a discovery order required a party to produce irrelevant material are not subject to immediate review. *B.R.M. v. OhioHealth Corp.*, 5th Dist. Richland No. 2022 CA 0078, 2023-Ohio-2399, ¶ 9; *Hope Academy Broadway Campus v. White Hat Mgt. LLC*, 10th Dist. Franklin No. 12AP-116, 2013-Ohio-911, ¶ 43. To the extent that Masadeh's assignment of error challenges the trial court's order on the ground that it required

the disclosure of irrelevant material, the trial court's order is interlocutory and we lack jurisdiction to consider the argument.

### III. Conclusion

**{¶36}** Because Masadeh did not meet his burden of demonstrating that he is asserting the attorney-client privilege in the best interests of BWR and BWRRE, the trial court did not err in granting the motion to compel. The assignments of error raised by Masadeh and the subpoenaed entities are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.**, and **KINSLEY, J.**, concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.

15